NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260329-U

NOS. 4-26-0329, 4-26-0330, 4-26-0331 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 10, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Z.A., R.A., and P.M., Minors, | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Tazewell County |
| v. | ) | Nos. 25JA124 |
| Alexis H., | ) | 25JA125 |
| Respondent-Appellant). | ) | 25JA126 |
| | ) | |
| | ) | Honorable |
| | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Appellate counsel's motion to withdraw is granted because no meritorious issues
        could be raised on appeal.

¶ 2    In 2025, the State filed a petition for adjudication of wardship pertaining to each of

respondent Alexis H.'s minor children: Z.A. (born in 2010), R.A. (born in 2013), and P.M. (born

in 2014). The circuit court accepted respondent's stipulation that the allegations in the petition

could be proven to the requisite burden of proof. At the adjudicatory and dispositional hearings,

respondent expressed a general reservation about proceeding with that stipulation, but the court

indicated it had already been accepted. The court ultimately found the children neglected and

respondent unfit, and it made the children wards of the court. Respondent now appeals. Her

appointed appellate attorney has filed a motion and brief pursuant to *Anders v. California*, 386

U.S. 738 (1967), seeking to withdraw as counsel, contending that the appeal of this case presents no potentially meritorious issues for review. We agree, and we therefore grant the motion to withdraw and affirm the circuit court's judgment.

¶ 3                              I. BACKGROUND

¶ 4                    A. Petition for Adjudication of Wardship

¶ 5          On August 18, 2025, the State filed a petition for adjudication of wardship in three separate cases in Tazewell County pertaining to each of respondent's children: Z.A. (No. 25-JA-124), R.A. (No. 25-JA-125), and P.M. (No. 25-JA-126). The children's fathers—Robert A., the father of Z.A. and R.A., and Timothy M., the father of P.M.—were also named as parties, but they are not part of the present appeal. We therefore delineate the facts pertaining to the fathers only where relevant.

¶ 6          The petitions alleged that the children were neglected "pursuant to 705 ILCS 405/2-3(1)(b) [(West 2024)] in that the Minor's environment is injurious to the Minor's welfare." The petitions also alleged, in pertinent part, as follows. Respondent was previously found fit in a juvenile court case in Tazewell County from 2017 (No. 17-JA-122). She has a history of drug abuse. In July 2025, she was smoking methamphetamines in the home in front of P.M., was impaired, and could not supervise her children. The same month, she stated that she may be pregnant, and though she initially resisted submitting to drug testing, her drug test results were positive for amphetamines, methamphetamines, and marijuana. When an investigator from the Illinois Department of Children and Family Services (DCFS) informed respondent of the drug test results and the need for a safety plan, she became animated and appeared unable to control herself. One of her children, Z.A., suspected respondent of using drugs because she lost weight quickly, became easily irritated, and could not focus. He also stated that she would probably pass a drug

test because he found stored urine in her possession. According to Z.A., respondent moves from place to place but does not have her own home. He expressed a desire to live with his aunt. On one occasion, respondent attempted to take Z.A. away from his aunt's house, resulting in an argument and law enforcement being called and dispatched to the scene. In August, respondent indicated she was accepting a job with the United States Navy.

¶ 7                                    B. Shelter Care Hearing

¶ 8            On August 19, 2025, the circuit court held a shelter care hearing. Respondent and Robert were present, but Timothy was not. The court asked respondent if she was comfortable with Z.A. and R.A. staying with Robert, and respondent answered in the negative. She also indicated that she objected to the request for shelter care of P.M. The State set forth a factual basis to support the allegations in the petition, largely based on evidence in the record or topics about which Jacqueline Thompson, a DCFS investigator, could testify. The guardian *ad litem* for the children agreed with this proffer.

¶ 9            The circuit court found probable cause for the petition's allegations. Furthermore, it found that there was no immediate and urgent need to remove Z.A. and R.A. from the home, and it ordered that they were to remain in the temporary custody of Robert but continue to live with their aunt. However, it found immediate and urgent necessity for the removal of P.M. from the home, and she was placed into the temporary custody of DCFS. The court ordered visitation between respondent and her children, which was to be supervised by DCFS, and it appointed the public defender to represent her.

¶ 10                                    C. Stipulation

¶ 11            At a subsequent hearing on August 28, respondent's counsel indicated they were still perfecting their answer and would like a bit more time. It was also noted that respondent was

not receiving visitation. The circuit court permitted a continuance, and the hearing was adjourned.

¶ 12        The next hearing occurred on October 2. Respondent's counsel again indicated that she was requesting additional time to create an answer to the petition, which the circuit court allowed. Timothy made his first appearance during this hearing, and the allegations that the children have been neglected were read in open court; respondent was present to hear them. During the same hearing, it was noted that she was not permitted visitation with her children because the caseworker did not believe it was in their best interest. The court rejected her attempts to have her visitation reinstated, deferring to the judgment of the caseworker.

¶ 13        On October 30, respondent filed an amended answer to the petitions, denying some, but not all, of the allegations. Robert also filed an amended answer to the petition, stipulating that its allegations could be proven to the applicable standard of proof. During the hearing later that day, the circuit court set a pretrial hearing for November 20 but did not set a trial date based on the agreement of the State and respondent. The court advised the parties to cooperate with DCFS "to correct the conditions that brought the children into care. Failure to do so risks termination of your parental rights."

¶ 14        On November 20, the circuit court reconvened. Respondent was present with her attorney, who indicated that she was filing an amended answer that day, which would not necessitate a trial on the adjudicatory petition, but which requested a full dispositional hearing. Counsel then handed the court the amended answer, which indicated that respondent "neither admits nor denies the allegations in *Count(s)*/Paragraph(s) I but stipulates the allegations could be proven to the applicable standard of proof."

¶ 15        The circuit court proceeded to admonish respondent. It asked for confirmation that "you're not admitting nor denying the allegations. You're merely stipulating that they could be

proven to the applicable standard which in this case would [be] by preponderance of the evidence. Is that the answer that you filed here today?" Respondent answered in the affirmative. She also indicated that it was her signature at the bottom of the amended answer; that she was not threatened to amend her answer; that she submitted the amended answer freely and voluntarily; and that she has a right to deny the allegations and have a full evidentiary hearing on the original petition. She stated that she understood she would not have a full evidentiary hearing, that she had plenty of time to meet with her attorney to discuss her options and her decision to stipulate, and that the process was explained to her by her attorney. She indicated that she was thinking clearly and that she was not under the influence. All present attorneys of record at the hearing indicated their belief that no further colloquy between respondent and the court was necessary. The court entered an order that day indicating that her amended answer was "knowingly, intelligently and voluntarily made."

¶ 16        The circuit court indicated that the case would be set for entry of adjudicatory and dispositional orders on January 8. The court also addressed the issue of visitation. It was noted that P.M. had signed a letter indicating a desire to receive counseling before she continued visitation with respondent. DCFS recommended against visitation, and the court agreed with that recommendation.

¶ 17                                D. Adjudicatory Hearing

¶ 18        On January 8, the circuit court reconvened. Counsel for respondent requested another continuance to give time for respondent to present and discuss additional evidence before proceeding. The court allowed this continuance and adjourned the hearing.

¶ 19        The proceeding reconvened in February 2026. The circuit court addressed both respondent and Robert, who were present, stating: "I've got to ask several questions of both of you

parents to make sure that the answers that were previously filed were made knowingly and voluntarily" and that

"so that you both know, you have an absolute right to deny the allegations in the petition and have a full evidentiary hearing.

\*\*\* [B]ut the answers that each of you filed, this—the amended answers that you filed are in the vein of a stipulation which means that you are stipulating that the State does, in fact, have sufficient evidence that would legally support a finding by a preponderance of the evidence that the children were, in fact, neglected by way of injurious environment, and so I'll start with you Robert."

The court then proceeded to admonish the father of Z.A. and R.A.

¶ 20        Afterwards, the circuit court addressed respondent as follows: "[I]t sounds like I in large part did have that same colloquy with you at the last time. Nothing's changed, correct, as far as the answer for your stipulation?" Respondent replied: "I'm not sure what stipulation—what— what was it?" She then conferred with her counsel, who then stated to the court that he was "unsure at this time if my client wants to proceed with that answer." The court stated: "Well, it was already accepted by the Court."

¶ 21        The circuit court then called for a factual basis. For each individual allegation of the petition, the State indicated which of three investigators would provide testimony. The State also indicated that it would ask the court to take judicial notice of the previous juvenile court cases. This includes cases in Tazewell County from 2017 (Nos. 17-JA-122, 17-JA-123, and 17-JA-124), which resulted in respondent being deemed fit and the fathers being deemed unfit, and a case from 2019 (No. 19-JA-75), which resulted in Robert being deemed fit.

¶ 22        The circuit court asked respondent's counsel if the proffer was consistent with his

review of the discovery, and he agreed that it was. The court then found as follows:

> "I will hereby find that the amended answer from the mother was previously accepted by the Court ***.
>
> I find that there is a sufficient factual basis to support that the State does have ample evidence to—by a preponderance of the evidence to determine that the children were, in fact, neglected by way of injurious environment."

¶ 23                            E. Dispositional Hearing

¶ 24        The circuit court proceeded to a dispositional hearing and took into consideration the December 23, 2025, dispositional hearing report created by caseworker Jessica Siadek. Siadek answered the court's questions regarding the report and updates between its creation and the present hearing, including previously unavailable drug test results. Siadek reported that the recent drug test results showed respondent tested positive for amphetamines and methamphetamines on December 9, 2025; tested positive for cocaine metabolite on December 16; and failed to appear for her drug test on December 22. So far in January and February 2026, all drug tests had come back negative for all substances, and there were no failures to appear during those months. Siadek also indicated that respondent had visitation with P.M. in January, and P.M. wanted visitation to continue.

¶ 25        Siadek was then sworn in for questioning from the State's counsel. She testified that DCFS was planning to supervise future visitation and that, though respondent was deemed unfit, she had arrived at the hearing that day holding a baby, which was purported to be her cousin's child that she was babysitting.

¶ 26        Counsel for respondent cross-examined Siadek, during which she testified as follows. There was no circuit court order indicating respondent's lack of fitness in the present case.

Her parenting class should be wrapping up such that Siadek should receive a certificate of completion shortly. Siadek had also not received anything from the mental health individual counseling provider about respondent's status. A progress note from the provider based on visitation that occurred on January 15 was entered into evidence and indicated no issues during treatment. Siadek could not verify respondent's current living situation. She requested agency supervision of visitation between respondent and P.M. and noted that Robert supervised visitation with Z.A. and R.A.

¶ 27 Counsel for Timothy briefly cross-examined Siadek to confirm for the record that respondent had not yet been found unfit in this matter.

¶ 28 The guardian *ad litem* for the children also briefly cross-examined Siadek to confirm that a referral packet had not yet been sent to respondent's mental health provider but would be.

¶ 29 The circuit court then reexamined Siadek, during which she testified that respondent may be the victim of identity theft; was recently employed as a waitress but has not provided proof of income; and was interested in becoming a nail technician. Siadek also testified that she has not received documentation of respondent's grant to open a sober living facility and was not aware of respondent's suicide attempt two years ago.

¶ 30 Respondent's counsel then proffered that respondent is currently employed at a business called 8th Street Cafe, is getting another job, and plans to supplement her income by working for a food delivery company. He requested that the circuit court find respondent fit.

¶ 31 At the close of evidence, the circuit court indicated that it considered the evidence and concluded that the children would be made wards of the court. The court found that respondent was committed to her children but that she was unfit due to ongoing drug use, mental health issues,

and housing instability. It indicated that the recommended services were appropriate but that domestic violence could be handled with individual counseling, which does not need to be a stand-alone service at that time. The court also ordered a psychiatric evaluation and a trauma-informed parenting class. The court specifically concluded:

> "I am encouraged by the five negative drops that we have for January and February, but understanding mom's longstanding issue with substance abuse and then how that affects her mental health stability, there's gonna need to be a very sustained period of sobriety before I'm comfortable finding her fit.
>
> So therefore, I do find that mother is unfit and the evidence is sufficient to support that finding here today. Let me review my notes."

Further, it found that Robert remained fit, willing, and able, such that he maintained guardianship and custody of his children. Timothy was found unfit and unwilling.

¶ 32 The circuit court set future status dates to see how services were going. Siadek corrected the record to note that the last visitation with P.M. was in February, not January. The court indicated that this would not change any of the findings.

¶ 33 The circuit court issued a written order finding that Timothy was in default of the petition and that there is a factual basis for the voluntary and knowing stipulation of both respondent and Robert. The proffered allegations were attached to the order and incorporated into it as the court's findings. The court further found that the children "are abused or neglected as defined by 705 ILCS 405/2-3 [(West 2024)] in that the minor(s): *** is in an environment that is injurious to the welfare of the minor as defined by 705[ ]ILCS 405 2-3(1)(b) [(West 2024)]." The court found that the abuse or neglect was inflicted by respondent and Timothy.

¶ 34 In a separate dispositional order, the circuit court found respondent to be an unfit

parent for the reasons stated in the petition and report; Robert to be a fit parent; and Timothy to be an unfit and unwilling parent. It further found that it was consistent with the health, welfare, and safety of the children for them to be made wards of the court. It found the services to be appropriate. It also stated that Robert would have custody of Z.A. and R.A. and that DCFS would have the right to place P.M. into an appropriate custodial situation. The court allowed supervised visitation.

¶ 35　　　　In yet another order issued that day, the circuit court indicated that respondent's services included the following: execution of releases for services; cooperation; obtaining and maintaining stable housing; communicating residential and contact information to the appropriate caseworker; visitation; substance abuse assessment and treatment; parenting classes; counseling; a psychiatric evaluation; trauma-informed parenting; documentation from each appropriate agency; and drug testing.

¶ 36　　　　　　　　　　　　　　F. Appeal

¶ 37　　　　Respondent then initiated this appeal, and counsel was appointed to represent her on appeal.

¶ 38　　　　On appeal, appellate counsel filed an *Anders* motion and brief seeking to withdraw, contending there is no issue of merit to advance. Adequate notice of the motion and brief were provided by counsel and the clerk of this court, and respondent did not file a response.

¶ 39　　　　　　　　　　　　　II. ANALYSIS

¶ 40　　　　Appellate counsel argues that, after reviewing the record in full, there are no meritorious issues on appeal, including because (1) respondent's stipulation was made knowingly and voluntarily, (2) her stipulation was based on a sufficient factual basis, and (3) the evidence supported making the children wards of the court.

¶ 41　　　　　　　　　　　　A. *Anders* Procedure

- 10 -

¶ 42    The United States Supreme Court set forth the procedure for appellate counsel to withdraw when she concludes an appeal is frivolous. See *Anders*, 386 U.S. at 744 (describing the applicable procedure). Counsel's request to withdraw must be accompanied by a brief referring to anything in the record that could conceivably support an appeal. *Id.* A copy of this motion and brief must be furnished to the client, who then must be given time to raise any potential arguments. *Id.* After identifying potential issues for an appeal, counsel must form arguments in support of these potential issues. *Id.*; *In re Brazelton*, 237 Ill. App. 3d 269, 271 (1992). Counsel must demonstrate why these arguments are frivolous. See *Brazelton*, 237 Ill. App. 3d at 271 (indicating that counsel must identify issues that could conceivably be raised on appeal and why they are frivolous). The appellate court will review the record to determine whether the potential arguments are indeed frivolous. *Id.* We bear the ultimate responsibility to make that determination. *Anders*, 386 U.S. at 744; *People v. Teran*, 376 Ill. App. 3d 1, 5 (2007).

¶ 43                                    B. Adjudicatory Order

¶ 44    The Juvenile Court Act of 1987 sets forth the procedure the circuit court must follow in determining "whether a minor should be removed from his or her parents' custody and made a ward of the court." *In re A.P.*, 2012 IL 113875, ¶ 18. At the adjudicatory stage, a circuit court determines only whether the minor is abused, neglected, or dependent. 705 ILCS 405/2-18(1) (West 2024). If the court makes that determination, it must put the factual basis supporting the determination in writing. *Id.* § 2-21(1). The court then proceeds to the dispositional stage, where it determines whether it is consistent with the health, safety, and best interests of the minor and the public that the child be made a ward of the court. *Id.* § 2-27(1). "A proceeding for adjudication of wardship 'represents a significant intrusion into the sanctity of the family which should not be undertaken lightly.' " *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004) (quoting *In re Harpman*, 134 Ill.

App. 3d 393, 396-97 (1985)).

¶ 45    During the adjudicatory stage, the burden is on the State to prove the allegations in its petition by a preponderance of the evidence. *In re S.R.*, 349 Ill. App. 3d 1017, 1020 (2004). "On review, a trial court's finding of [abuse or] neglect will not be reversed unless it is against the manifest weight of the evidence." *A.P.*, 2012 IL 113875, ¶ 17. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Id.*

¶ 46                    1. *Knowing and Voluntary Stipulation*

¶ 47    Illinois courts have long held, "for a parent's admission to be valid in an adjudicatory phase of a neglect proceeding it must be intelligently and voluntarily made. [Citation.] This knowing and voluntary requirement protects a parent from admitting to neglect or abuse when their conduct does not fall within the State's allegations." *In re M.H.*, 196 Ill. 2d 356, 366 (2001). "[I]t must be apparent from the record that the party making the admission was aware of the consequences of his admission." *In re Johnson*, 102 Ill. App. 3d 1005, 1012 (1981) (citing *In re Beasley*, 66 Ill. 2d 385, 392 (1977)).

¶ 48    Furthermore, caselaw suggests explicit admonishments at the time of an admission are not required so long as the record supports a finding that a parent was otherwise previously informed of the consequences of a neglect finding. See *In re N.G.*, 2025 IL App (4th) 250888-U, ¶ 27 (collecting cases in which an admission to the allegations in a petition for adjudication of wardship was deemed knowing and voluntary when the parent was admonished and represented by counsel).

¶ 49    Here, the circuit court conducted an extensive colloquy with respondent prior to accepting her stipulation to the allegations in the petition. The court ensured she understood her rights with respect to the State's petition and verified she wished to forgo an evidentiary hearing

and stipulate to the allegations. The court then inquired whether she was doing so "freely and voluntarily" and confirmed she was not under the influence of any drugs, alcohol, or prescription medication. Based on all of this, it is clear her stipulation was knowing and voluntary, and we agree with counsel that any argument to the contrary would be frivolous.

¶ 50 While the record reflects respondent's later hesitancy to proceed with her stipulation, this hesitancy was after the stipulation had already been entered into, along with the in-person admonition and confirmation that she wished to proceed with the stipulation. No explanation was provided at the hearing about her change of heart. There was no suggestion during the hearing that the stipulation was based on false information, some violation of rights, unreasonableness, a violation of public policy, fraud, or another reason, and the record does not support such a proposition. In such circumstances, we have rejected efforts to withdraw a stipulation. See *In re Commitment of Walker*, 2014 IL App (2d) 130372, ¶¶ 43, 66 (rejecting respondent's motion to withdraw his stipulation stating he waived his right to have the State prove that he is a sexually dangerous person beyond a reasonable doubt because he "failed to allege anything that would have established" the stipulation was "untrue, violative of public policy, unreasonable, or procured by fraud," and stating that "[t]he mere fact that a party might have come to a different decision on whether to stipulate is not one of the allowable bases to undo a stipulation").

¶ 51                                    2. *Factual Basis*

¶ 52 In addition to ensuring a stipulation is knowing and voluntary, our supreme court has held that "due process requires a circuit court to determine whether a factual basis exists for an admission of parental unfitness before it accepts the admission." *M.H.*, 196 Ill. 2d at 368. Although *M.H.* involved a parent's stipulation to unfitness at a termination of parental rights

- 13 -

hearing, this court has applied the same factual basis requirement to a parent's stipulation of neglect at an adjudicatory hearing. See *In re C.J.*, 2011 IL App (4th) 110476, ¶ 32 (citing favorably to *M.H.* in support of accepting an admission to a petition for adjudication of wardship). In the context of a fitness determination, this court has analogized to the factual basis of a guilty plea and held that " '[a]ll the trial court need do to comply with the factual basis requirement *** is to ask the prosecutor to *briefly* describe the evidence the State would be prepared to present if the case went to trial.' " (Emphasis in original.) *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 32 (quoting *People v. Williams*, 299 Ill. App. 3d 791, 794 (1998)).

¶ 53 Here, the State went through each individual count of the petition and proffered the evidence it would use to prove the allegations in each paragraph. Based on the State's detailed proffer, the circuit court had ample evidence to find there was a sufficient factual basis to support respondent's stipulation to the allegations in the petition. The court also met the requirement that the factual basis be put to writing pursuant to section 2-21(1) because it issued a written order finding that there was a factual basis and attaching the proffered allegations as findings to the order. As such, we agree with counsel that any argument there was not a sufficient factual basis to support respondent's stipulation to the allegations in the State's petition would be without merit.

¶ 54 Because we have found respondent's stipulation was knowing, voluntary, and supported by a sufficient factual basis, it is evident that no meritorious challenge can be raised on appeal to the sufficiency of the circuit court's adjudicatory finding.

¶ 55                                C. Dispositional Order

¶ 56 At the dispositional stage, the circuit court must determine whether it is consistent with the health, safety, and best interests of the minor and the public that he or she be made a ward of the court. 705 ILCS 405/2-27(1) (West 2024); *In re Audrey B.*, 2015 IL App (1st) 142909, ¶ 31.

The court also determines whether the parent is unfit, unable, or unwilling, for reasons other than financial circumstances alone, to care for, protect, train, or discipline the minor. 705 ILCS 405/2-27(1) (West 2024). "In contrast to the adjudicatory hearing, where the court determines only whether the child is abused or neglected, the wardship determination at the dispositional hearing 'is based on the best interest to the child when considering the totality of the circumstances surrounding the child's life.' " (Emphasis omitted.) *In re M.D.*, 2022 IL App (4th) 210288, ¶ 64 (quoting *In re D.S.*, 2018 IL App (3d) 170319, ¶ 15). Because of this, "[t]he court may consider evidence of parental deficiencies in the child's environment beyond those alleged in the petition." *Id.* ¶ 65. A circuit court's decision at a dispositional hearing "will be reversed *** if the findings of fact are against the manifest weight of the evidence." *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008).

¶ 57         In this case, respondent's stipulation neither admitted nor denied the allegations in the petition but stipulated that they "could be proven to the applicable standard of proof." In entering the stipulation, respondent's counsel indicated that it "will not necessitate a trial" "on the adjudication petition" but that respondent would like to proceed with a full dispositional hearing. At the hearing, Siadek's testimony indicated that respondent had drug use and mental health issues. Respondent did not put forth any witnesses or evidence to the contrary. We also note that the standard of proof in the circuit court was a preponderance of the evidence. *In re Lakita B.*, 297 Ill. App. 3d 985, 994 (1998). Given this relatively low standard and the evidence in the record, we cannot conclude that the court's findings about the best interest of the children were against the manifest weight of the evidence. As there is no viable issue to raise on appeal, appointed counsel's motion to withdraw is granted.

¶ 58                                III. CONCLUSION

- 15 -

¶ 59        For the reasons stated, we grant the motion to withdraw and affirm the circuit court's judgment.

¶ 60        Affirmed.